```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- X
LORETTA M. SHAPIRO,                 :
                Plaintiff,          :
                                    :   COMPLAINT
        -against-                   :   Docket no: 08CV6538CM
                                    :              "ECF CASE"
NEW YORK UNIVERSITY, NEW YORK       :
UNIVERSITY SCHOOL OF MEDICINE, NEW  :
YORK UNIVERSITY SCHOOL OF MEDICINE  :
DEFINED BENEFIT RETIREMENT PLAN,    :
NEW YORK UNIVERSITY MEDICAL CENTER  :
and NYU HOSPITALS CENTER,           :
                                    :
                Defendants.         :
----------------------------------- X
```



Plaintiff, LORETTA M. SHAPIRO, by her attorneys, Schwartz & Salomon, P.C., as and for her complaint against defendants alleges:

1. This action arises under the Employee Retirement Income Security Act of 1974 [29 U.S.C.A. §§ 1001 et seq.] ("ERISA" or the "Act") and more particularly § 502(a)(1)(B) of the Act [29 U.S.C.A. § 1132(a)(1)(B)]. The court has jurisdiction of this matter under 29 U.S.C.A. § 1132(e).

2. Plaintiff is a resident of the State of New York and resides at 176 Broadway, Apt. 14D, New York, NY 10038.

3. Plaintiff is a qualified participant in defendant New York University School of Medicine Defined Benefit Retirement Plan (the "Plan").

4. The acts complained of in this action, including the administration of the Plan, occurred within the Southern District of New York.

5. At all times material to this action, the Plan is, and has been, an employees' pension or retirement plan within the meaning of Section 401 of the Internal Revenue Code of 1986, as amended, and an employee pension plan within the meaning of 29 U.S.C.A. §§ 1002(2)(A) and 1002(35) of ERISA.

6. Upon information and belief, at all times material to this action, defendant New York University was, and continues to be, a not-for-profit corporation organized under the laws of the State of New York, which maintains an office at 70 Washington Square South, New York, New York 10012 ("NYU").

7. Upon information and belief, defendant New York University School of Medicine was, and continues to be, a division of NYU and maintains offices at 550 First Avenue, New York, New York 10016 (the "NYUSOM").

8. Upon information and belief, at all times material to this action, NYU was, and continues to be, the administrator and fiduciary of the Plan.

9. Upon information and belief, during all or portions of the time periods relevant to this action, the

Plan was a part of, or consolidated and/or administered collectively with, the retirement plans of other similarly-situated health care employers known as the "Health Services Retirement Plan" (the "HSRP"), which maintains offices at 555 West 57th Street, New York, New York 10019.

10. At various times relevant to this action, HSRP acted on behalf of NYU as its third-party administrator of the Plan.

11. Upon information and belief, at various times during the term of plaintiff's employment with NYUSOM, NYUSOM was a division of, or affiliated with, defendant New York University Medical Center, a New York not-for-profit corporation with its principal place of business located at 550 First Avenue, New York, New York 10016 (the "Medical Center").

12. Upon information and belief, in or about 1998, the Medical Center was restructured as defendant NYU Hospitals Center, a newly-formed New York not-for-profit corporation (the "Hospitals Center").

13. Upon information and belief, the Hospitals Center is the successor-in-interest to the Medical Center for purposes of this action.

14. On or about and between October 8, 1982, and August 31, 2000, plaintiff was employed by NYUSOM and/or

the Medical Center (the "Employer") as the billing coordinator of its "Cardiac Catheterization" department.

15. Plaintiff was terminated by Employer as of August 31, 2000, when Employer "outsourced" the job functions that were previously performed by plaintiff and Employer paid plaintiff through October 31, 2000.

16. During the time period relevant to the calculation of plaintiff's retirement benefit, the compensation payable by Employer to plaintiff consisted of two components as follows: (a) a base salary, and (b) a percentage of collections (the "Percentage Compensation").

17. The Percentage Compensation payable to plaintiff was non-discretionary, was not dependent on the number of hours that plaintiff worked and was calculated by applying a mathematical formula to the collections from billings for the services rendered by the Cardiac Catheterization department.

18. The Plan in effect during plaintiff's employment relevant to the calculation of her retirement benefit provided, in pertinent part, as follows:

> 'Compensation' means the compensation paid by the Contributing Employer to a Participant for Covered Employment which is included or properly includible in the Wage and Tax Statements (Form W-2) filed with the Internal Revenue Service with respect to such Participant. . . Compensation shall not include overtime pay (including any

earnings from hours of employment in excess of the Full Time standard of employment), bonuses, on call pay . . . , premium payments for holiday work, non-monetary benefits includible in taxable income . . . nor any portion of such compensation identified as reimbursement for expenses for uniforms and like items.

19. The terms of the Plan provide for plaintiff to receive a normal retirement benefit to commence at 65 years of age calculated upon plaintiff's "final average compensation", as defined in the Plan.

20. The Plan defines "final average compensation", in pertinent part, as one-fifth of the highest annual amounts of "Compensation" [as defined by the Plan] that plaintiff earned during a period of sixty (60) consecutive months of employment within the ten (10) year period prior to retirement.

21. On two separate occasions after plaintiff retired but before she applied for her retirement benefits, plaintiff asked HSRP, as third party administrator for NYU, to calculate the retirement benefit that she would be entitled to receive when she became 65 years of age.

22. In response to plaintiff's requests, on or about October 27, 2000 and again on or about February 23, 2004, HSRP estimated plaintiff's retirement benefit to be between $1,342 and $1,408 [on 10/27/2000], and between $1,379 and $1,504 [on 2/23/2004] depending on the payment option

5

selected by plaintiff, with monthly payments to commence on June 1, 2007, the first day of the first month following plaintiff's 65th birthday (collectively, the "Original Calculations").

23. In its Original Calculations, NYU correctly treated plaintiff's entire compensation, base salary and the Percentage Compensation, as "Compensation" under the Plan upon which plaintiff's retirement benefit was computed.

24. On or about March 17, 2007, plaintiff submitted her application to HSRP to begin collecting her retirement benefits on or about June 1, 2007.

25. In response, HSRP advised plaintiff that her retirement benefit would be between $864 and $942 depending on the payment option selected by plaintiff (the "Revised Calculation").

26. The Revised Calculation represented a significant reduction from the Original Calculations.

27. At no time after plaintiff received the Original Calculations and prior to the submission of her application to begin receiving her retirement benefit did HSRP or NYU ever inform plaintiff that the Original Calculations were erroneous or inaccurate.

28. After plaintiff and her attorneys inquired as to the discrepancy between the Original Calculations and the Revised Calculation, HSRP informed plaintiff, for the first time, that her Percentage Compensation was excludable from the definition of "Compensation" under the Plan since "pensionable earnings . . . do not include overtime".

29. On several occasions in 2007, HSRP and NYU continued to insist that the Percentage Compensation was overtime and not part of plaintiff's "pensionable earnings".

30. By letter dated August 21, 2007, plaintiff, by her attorneys, requested NYU to reconsider its refusal to include the Percentage Compensation in determining plaintiff's retirement benefit because the terms of the Plan did not support NYU's decision to exclude Percentage Compensation from definition of "Compensation" in calculating her retirement benefit.

31. By undated letter received on or about November 30, 2007, (the "Denial Letter"), the Medical Center and the NYUSOM asserted that plaintiff's claim for additional benefits was denied since: (i) plaintiff's "Percentage Compensation" was coded as "ADD COMP" on her pay stubs; (ii) NYU had used the term "ADD COMP" to mean overtime/bonus compensation; (iii) after verification, NYU

7

determined that plaintiff's Percentage Compensation was properly excludable from the definition of "Compensation" under the Plan since "pensionable earnings . . . do not include overtime"; and (iv) that the use of the words "ADD COMP" on plaintiff's pay stubs was a code for overtime pay.

32. The Denial Letter informed plaintiff of her right to file a written appeal within 60 days following receipt of the Denial Letter to NYU [the Plan Administrator] directed to: Nancy Sanchez, Vice Dean for Human Resources, One Park Avenue, 16th Floor, New York, NY 10016.

33. On or about January 16, 2008, plaintiff, by her attorneys, sent a written appeal dated January 15, 2008, to Ms. Nancy Sanchez at NYU by certified mail, return receipt requested, whereby plaintiff challenged the decreased retirement benefit based on NYU's failure to include her Percentage Compensation in calculating her retirement benefit (the "Appeal Letter").

34. The Appeal Letter was timely sent to NYU under the terms of the Plan and NYU's instructions.

35. Nonetheless, based on information furnished to plaintiff's attorneys by the United States Postal Service("USPS"), NYU refused to accept delivery of the Appeal Letter on January 18, 2008, then failed to claim the letter from the USPS after notice of attempted delivery was

left by the USPS with NYU, and the Appeal Letter was eventually returned to plaintiff's attorneys by the USPS after it was "UNCLAIMED" by NYU.

36. Plaintiff's attorneys then re-sent the Appeal Letter to Ms. Sanchez by overnight delivery service and first class mail with a letter of explanation regarding the earlier submission and NYU's refusal to accept delivery of, the Appeal Letter on or about January 18, 2008.

37. By letter dated April 10, 2008, NYU, by Nancy Sanchez, denied the appeal and reaffirmed its decision to exclude the Percentage Compensation from the calculation of plaintiff's retirement benefit (the "Appeal Denial").

38. In the Appeal Denial, while continuing to deny plaintiff her full retirement benefit, NYU decided to change its reason for doing so by now calling plaintiff's Percentage Compensation a form of "bonus" rather than "overtime", as NYU previously maintained.

39. Plaintiff has complied with all conditions in order to receive the full retirement benefit to which she is entitled based on her total compensation, including her Percentage Compensation.

40. NYU's decision and determination to deny plaintiff a retirement benefit based upon her total compensation including her Percentage Compensation was

arbitrary and capricious, irrational, erroneous, in violation of the terms of the Plan and in violation of ERISA because:

(a) plaintiff's Percentage Compensation was not overtime or bonus compensation;

(b) NYU's Percentage Compensation is not excluded from the definition of "compensation" or "final average compensation" under the Plan;

(c) NYU's interpretation of the Plan is flawed, contrived and contrary to the plain language of the Plan, which does not exclude or define "ADD COMP"; and

(d) NYU has acted in bad faith by mischaracterizing plaintiff's Percentage Compensation first as "overtime" and more recently as a "bonus", each of which are categories of compensation that are excluded from pensionable earnings, for, upon information and belief, the sole purpose of calculating a retirement benefit in an amount less than plaintiff is entitled to receive under the Plan.

41. As the direct and proximate result of the actions of defendants, plaintiff has been caused to incur attorneys' fees in an amount currently not known to plaintiff.

42. As a direct and proximate result of the actions of defendants, plaintiff has sustained damages in an amount

not now known to plaintiff but upon information and belief, such damages will approximate the amount of benefits due plaintiff in accordance with the Plan based upon her total compensation for each month since June 2007, and plaintiff will continue to sustain similar damages each month until the benefits are paid in full.

43. The defendant Plan is responsible for damages to plaintiff for the amounts due under the Plan and under ERISA.

44. Defendant NYU, as the Administrator of the Plan, is responsible for damages to plaintiff.

45. Defendants NYU, NYUSOM, the Medical Center, and the Hospitals Center as the successor to the Medical Center, are the entities that either employed plaintiff and/or are responsible to meet the Plan's liabilities, including damages to plaintiff.

WHEREFORE, Plaintiff requests relief against defendants as follows:

1. For an order determining the amount of retirement benefits due to plaintiff under the New York University School of Medicine Defined Benefit Retirement Plan and requiring the defendants to pay the monthly benefit determined by this Court to be due to plaintiff henceforth;

2. For judgment against the all defendants and in favor of Plaintiff in the amount of all retirement benefits accrued and unpaid to the date judgment is entered;

3. For judgment against all the defendants for interest on the amounts past due until the date judgment is entered;

4. For judgment against all the defendants awarding plaintiff her attorneys' fees and expenses of this action including costs; and

5. Awarding plaintiff such other and further relief as this Court deems just and proper under the circumstances.

Dated: July 22, 2008

                                      Yours, etc.,

                                      SCHWARTZ & SALOMON, P.C.

                                      by: _____
                                         Joseph N. Salomon (JS-4085)

                                      _____
                                         David Lobl (DL-5735)

                                      225 Broadway, Suite 4200
                                      New York, NY 10007
                                      Tel. (212) 732-6460

                                      Attorneys for Plaintiff